**This order is SIGNED.**

**Dated: April 2, 2026**

**PEGGY HUNT**
**U.S. Bankruptcy Judge**



*aep*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| In re: | Bankruptcy Case No. 25-22542 |
| MATTHEW DAVID MICHEL, | Chapter 13 |
| Debtor. | Honorable Peggy Hunt |

### MEMORANDUM OPINION

The issue presented is whether the Debtor's *Chapter 13 Plan* meets the "best interest of creditors test" under § 1325(a)(4) of the Bankruptcy Code[1] where the Debtor proposes no distribution to general unsecured creditors despite his ownership of a homestead that, absent recognition of his non-debtor spouse's alleged interest, has equity that could be distributed to creditors in a hypothetical Chapter 7 liquidation. The Court concludes that there is equity in the property because the interest claimed by the spouse does not exist under Utah law as she did not have a cognizable legal interest in the property on the petition date. Accordingly, the Plan does not comply with § 1325(a)(4) and the Chapter 13 Trustee's objection to confirmation of the Plan must be sustained.

---

[1] All references to the "Bankruptcy Code" are to title 11 of the United States Code.

## I.     JURISDICTION AND VENUE

The Court has jurisdiction over this contested matter under 28 U.S.C. §§ 157(a) and 1334 and the District Court's *Order of Reference* at DUCiv R 83-6.1. Pursuant to 28 U.S.C. § 157(b), the Court may hear and determine the matter by entry of a final order because it is a "core proceeding." It arises under the Bankruptcy Code and arises in this bankruptcy case, and is included as a core proceeding under 28 U.S.C. § 157(b)(2)(L). Venue of this case in this district is proper under 28 U.S.C. § 1408.

## II.     FINDINGS OF FACT

The facts are largely undisputed.[2]

### The Property and the Quit Claim Deed

In 2014, while the Debtor and his spouse ("**Spouse**") were married, a house was purchased in Layton, Utah (the "**Property**").[3] The Spouse did not have sufficient credit or income to qualify for a mortgage at that time.[4] The Debtor obtained financing for the purchase and the Property was titled in the Debtor's name.[5] It is not disputed that the Debtor, Spouse and their children have resided at the Property at all times relevant.

The Spouse cared for the couple's children full-time until 2018 when she was employed by the Davis School District.[6] There is no evidence of the Spouse's income until 2022. She earned less than $4,000 in 2022, and then in 2023 and 2024, approximately $12,000 and $22,000

---

[2] *See* Dkt. No. 47 (Joint Statement on the Admission of Exhibits and Stipulated Facts (hereinafter "**Stipulated Facts**")).

[3] Exh. 1 (Parcel Vesting Information).

[4] Stipulated Facts, ¶ 12.

[5] *Id.*, ¶¶ 4, 8; Exh. 1 (Parcel Vesting Information); Exh. 2 (Warranty Deed); Dkt. No. 6 (Schedule D, ¶ 2.3 and Schedule H); *see* Exh. 4 (Proof of Claim No. 6-1, pp. 6-25 (Note, Trust Deed, and Assignment of Trust Deed)).

[6] Stipulated Facts, ¶¶ 10, 11.

respectively.[7] There is no evidence of how this income was used by the Spouse and/or the couple. The Debtor's income during this period ranged between approximately $76,000 and $93,000.[8]

The Debtor obtained a loan in January 2024 and that debt was secured by a second mortgage on the Property.[9] By November 2024, the Debtor consulted bankruptcy counsel, and he received credit counseling in February 2025.[10]

On April 22, 2025, the Debtor executed and caused to be recorded a *Utah Quitclaim Deed* (the "**Deed**"), stating that Debtor as "Grantor hereby quitclaims to [Spouse as] Grantee for the sum of 0$, lawful money of the United States . . . , the [Property] . . . together with the appurtenances and all the estate and rights of the Grantor in and to the [sic] said real property."[11] Both the Debtor and the Spouse are listed as "Grantees."[12]

*The Bankruptcy Case and Plan Confirmation Objection*

On May 7, 2025, less than one month after the Deed was executed and recorded, the Debtor filed a *Petition* seeking relief under Chapter 13 of the Bankruptcy Code. The Spouse did not seek bankruptcy relief. The Debtor valued the Property at $434,000 and claimed that although only he had an interest in it the value of the portion he owned was ½ of the total

---

[7] Exhs. A (2022 Joint Tax Return, at 14), B (2023 Joint Tax Return, at 30), C (2024 Joint Tax Return, at 42).
[8] *Id.*
[9] Dkt. No. 6 (Schedule D, ¶ 2.1); Exh. 5 (Proof of Claim No. 1-1); *see* Stipulated Facts, ¶ 8.
[10] Dkt. No. 6 (Statement of Financial Affairs, ¶ 16); Exh. 6 (Certificate of Credit Counseling); *see* 11 U.S.C. § 109(h) (requiring prepetition credit counseling).
[11] Exh. 3 (Utah Quitclaim Deed); Stipulated Facts, ¶ 3.
[12] *Id.*; *see* Dkt. Nos. 6, 28, 57 (Schedule A/B and Amended Schedules A/B) (Debtor claiming ½ interest in the Property).

amount, or $217,000.[13] On the petition date, the Property was encumbered with liens securing prepetition debt totaling approximately $298,237.[14] The Debtor is the only obligor on this debt.[15]

The Debtor sought confirmation of a *Chapter 13 Plan* proposing no distribution to unsecured creditors.[16] The Trustee objected to confirmation asserting that there is equity in the Property available for distribution to unsecured creditors and, therefore, the Plan does not comply with § 1325(a)(4) of the Bankruptcy Code.[17] Specifically, the Trustee argued that the Debtor is the sole owner of the Property and that execution and recordation of the Deed transferring a ½ interest in the Property to the Spouse can reasonably be expected to be avoided under § 548 of the Bankruptcy Code. The Trustee calculated that there would be over $26,000 in equity in the Property to be distributed to unsecured creditors in a Chapter 7 liquidation if the transfer was avoided.[18]

The Debtor responded that the Plan complies with § 1325(a)(4) because he is not the sole owner of the Property. According to the Debtor, he and his Spouse each hold a ½ interest in the Property and, therefore, there is no equity in the Property because the value of his ½ interest in the Property is less than the amount of prepetition secured debt.[19]

---

[13] Dkt. Nos. 28, 57 (Amended Schedules A/B, ¶ 1.1). The Debtor initially valued the Property at $467,000. Dkt. Nos. 6, 13 (Schedule A/B and Amended Schedule A/B, ¶ 1.1).

[14] Exh. 4 (Proof of Claim No. 6-1); Exh. 5 (Proof of Claim No. 1-1); *see* Stipulated Facts, ¶ 7.

[15] *See* Stipulated Facts, ¶ 8; Exh. 4 (Proof of Claim No. 6-1, pp. 6-25 (Note, Trust Deed, and Assignment of Trust Deed)); Exh. 5 (Proof of Claim No. 1-1, pp. 5-23 (Note and Trust Deed)); *see also* Dkt. No. 6 (Schedule D, ¶¶ 2.1, 2.3 and Schedule H (listing no codebtors)).

[16] Exh. 7 (Chapter 13 Plan, Part 5, filed at Dkt. No. 2).

[17] *See* Dkt. Nos. 14, 15, 29, 37, 48, 58, 62, 67 (collectively, the "**Objection**"). The Trustee filed a Memorandum in Support of the Objection, Dkt. No. 26 ("**Tr. Memo.**"), a Reply to the Debtor's response to the Objection, Dkt. No. 40 ("**Tr. Reply**"), a Post-Hearing Supplemental Brief, Dkt. No. 52 ("**Tr. Supp. Brief**"), and a Notice of Supplemental Authority, Dkt. No. 68.

[18] Exh. 8 (Liquidation Analysis Worksheet).

[19] The Debtor filed a Response to the Trustee's Objection, Dkt. No. 39 ("**First Dr. Resp.**"), a Supplemental Response, Dkt. No. 46 ("**Second Dr. Resp.**"), and a Response to the Tr. Supp. Brief, Dkt. No. 55 ("**Dr. Supp. Resp.**") (collectively, "**Dr. Briefs**").

Hearings on the Trustee's objection to confirmation were held. The Court received evidence and heard the arguments and representations of the parties. Subsequently, the Court entered an *Order,* sustaining the Trustee's objection to confirmation of the Debtor's Plan.[20] This *Memorandum Opinion* serves as the Court's findings of fact and conclusions of law required under Federal Rule of Civil Procedure 52, made applicable to this contested matter under Federal Rules of Bankruptcy Procedure 7052 and 9014(c).[21]

## III.   ANALYSIS

Confirmation of a plan proposed under Chapter 13 of the Bankruptcy Code is governed by § 1325. The Court "shall" confirm a plan if the debtor shows that subsections (a)(1) – (9) of § 1325, to the extent applicable, are met.[22] In this case, the Debtor's Plan does not comply with § 1325(a)(4) and, therefore, it cannot be confirmed.

### A.   Section 1325(a)(4) Requires That Distributions to Unsecured Creditors Under a Plan Are Not Less Than They Would Receive in a Chapter 7 Liquidation.

Section 1325(a)(4) of the Bankruptcy Code, known as the "best interests of creditors test," states that a plan must be confirmed if –

> the value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7 of this title on such date[.]

This section requires the Court to make two calculations: (1) "the value, as of the effective date of the proposed Chapter 13 plan, of the property to be distributed to each unsecured creditor in Chapter 13, taking into account the Chapter 13 administrative expenses" and (2) "the amount that would be paid on each allowed unsecured claim if the debtor's estate were liquidated in a

---

[20] Dkt. No. 69 (outlining procedural posture of the case and evidentiary record).

[21] Any findings of fact herein are also deemed, to the extent appropriate, to be conclusions of law, and any conclusions of law are similarly deemed to be findings of fact and shall be equally binding as both.

[22] 11 U.S.C. § 1325(a). *See In re Alexander*, 363 B.R. 917, 921–22 (B.A.P. 10th Cir. 2007) (burden on debtor); Local Rule 2083-1(j)(2) (debtor bears the burden of proof on confirmation).

hypothetical Chapter 7 case, taking into account the Chapter 7 administrative expenses."[23] To prevail under § 1325(a)(4), the "distribution amount determined in the first, Chapter 13, calculation" must not be "less than the amount in the second, Chapter 7, calculation."[24]

Here, the first calculation is undisputed – the Debtor's Plan does not propose a distribution to unsecured creditors. At issue, therefore, is whether unsecured creditors would receive a distribution in a Chapter 7 liquidation. This calculation depends on whether there was equity in the Property on the petition date – if so, the Debtor cannot meet his burden of establishing that § 1325(a)(4) has been met because there would be a distribution to unsecured creditors in a Chapter 7 liquidation. Determining whether equity exists depends on whether the Spouse had a ½ interest in the Property on the petition date.

**B. Section 1325(a)(4) Is Not Met Because the Spouse Did Not Have a ½ Interest in the Property and, Therefore, Equity Exists to Distribute to Unsecured Creditors.**

Section 541(a)(1) of the Bankruptcy Code provides, with exceptions not applicable here, that a debtor's bankruptcy estate comprises "all legal or equitable interest of the debtor in property as of the commencement of the case." It is well-established that what is "an interest of the debtor in property" is "created and defined by state law."[25] Thus, whether the Spouse had a ½ interest in the Property on the petition date is examined under Utah law.

Utah recognizes legal and equitable interests in real property.[26] The Debtor does not argue that the Spouse had legal title to the Property because of the Deed or otherwise and, therefore, does not address the Trustee's arguments that the execution and recordation of the

---

[23] *In re Dewey*, 237 B.R. 783, 788 (B.A.P. 10th Cir. 1999).
[24] *Id*.
[25] *Butner v. United States*, 440 U.S. 48, 55 (1979) (citing *Lewis v. Mfrs. Nat'l Bank*, 364 U.S. 603, 609 (1961)); *Parks v. FIA Card Servs., N.A. (In re Marshall)*, 550 F.3d 1251, 1255 (10th Cir. 2008).
[26] *See, e.g.*, Utah Code § 57-1-1 *et seq.*; *Panagopulos v. Manning*, 93 Utah 198, 69 P.2d 614, 619 (1937); *Stucki v. Ellis*, 114 Utah 486, 202 P.2d 486, 493 (1949); *White v. White*, 2017 UT App 140, 402 P.3d 136, 143.

Deed is avoidable under § 548(a) of the Bankruptcy Code.[27] He says the Deed is irrelevant because the Spouse had a ½ equitable interest in the Property that predated the avoidance lookback period based on her "possessory and marital interest in the family residence[]"[28] recognized under Utah homestead law.[29]  These interests, if recognized, would also mean there was no "transfer . . . of an interest of the debtor in property" under § 548.[30] The Debtor argued at the hearing, perhaps alternatively, that the asserted equitable interest affords the Spouse a homestead exemption in the amount of $47,700 which is more than the $26,000 the Trustee calculated would be distributed to unsecured creditors in a Chapter 7 liquidation.[31] Both of these arguments, based primarily on Utah homestead law, are without merit.

The Court acknowledges that it is well-settled that the purpose of a homestead exemption is to "protect citizens and their families from the miseries of destitution"[32] and thus "homestead statutes should be liberally construed."[33] But, as discussed below, mere possession of property, without more, does not create an equitable interest in property recognized under Utah homestead law.

---

[27] *See* Tr. Memo, pp. 3-7 (arguing execution and recordation of Deed is avoidable under § 548); First Dr. Resp. (not addressing this argument); Tr. Reply (arguing avoidance issue); Second Dr. Resp. (not addressed); Dr. Supp. Resp., p. 3 (avoidance not addressed except to state that transfer to the wife "did not create an interest[,]" it merely "aligned legal title with . . . existing possessory and marital interest . . .").

[28] Dr. Supp. Resp., p. 3.

[29] Second Dr. Resp., p. 2 (the purpose of the homestead exemption "goes beyond the legal and titled ownership of just one spouse.").

[30] *See id.*, p. 6; Dr. Supp. Resp., pp. 2–3 ("The April 22, 2025 transfer did not create an interest where none existed; it aligned legal title with Debtor's wife's existing possessory and marital interest in the family residence."). The Debtor also argues that he did not make a "transfer" by executing and recording the Deed because real property may be conveyed without a deed. Second Dr. Resp., p. 6 (citing *Stucki*, 202 P.2d at 493). But *Stucki* is not relevant for the point argued by the Debtor.

[31] *See generally* Dr. Briefs.

[32] *P.I.E. Emps. Fed. Credit Union v. Bass*, 759 P.2d 1144, 1145 (Utah 1988); *accord Panagopulos*, 69 P.2d at 618, *quoted in, In re Correa*, 670 B.R. 651, 653 (Bankr. D. Utah 2025) (Hunt, J.).

[33] *Correa*, 670 B.R. at 653-54 (citing cases); *Panagopulos*, 69 P.2d at 617.

7

1. The Spouse must have an ownership interest in the Property to claim an exemption under Utah Code § 78B-5-503(2).

The Utah Constitution requires that the legislature "provide by statute for an exemption of a homestead. . . ."[34] Consistent with this grant of authority, the legislature has enacted homestead statutes that have been amended over time. The current homestead exemption, made applicable in this case under § 522(b) of the Bankruptcy Code, is set forth in § 78B-5-503 of the Utah Exemption Act.[35]

Section 78B-5-503 differentiates exemption claims made by "individuals" on behalf of a "household" and those made by "joint owners." Subsection (2)(a) of that section provides for claims by individuals, stating:

> (a) An individual is entitled to a homestead exemption consisting of property in this state in an amount not exceeding:
> . . .
> (ii) $42,700 in value if the property claimed is the primary personal residence of the individual.[36]

The individual under this subsection claims an exemption of a "primary personal residence," defined in § 78B-5-503(1)(c) as "a dwelling . . . in which the individual and the individual's household reside." The word "household," in turn, is defined in § 78B-5-503(1)(a) to include "persons related by blood or marriage living together in the same dwelling as an economic unit . . . ." Therefore, under § 78B-5-503(2)(a) a single person may claim an exemption for a dwelling resided in by that person and others living in the dwelling, including a spouse.

When more than one person is claiming a homestead exemption, they do so under subsection (2)(b) of § 78B-5-503, which states:

> (b) If the property claimed as exempt is *jointly owned*, *each joint owner* is entitled to a homestead exemption, except that:

---

[34] Utah Const., art. XXII, § 1.
[35] Utah Code § 78B-5-501 *et seq.*
[36] Utah Code § 78B-5-503(2)(a)(ii).

8

. . .

    (ii)  for property exempt under Subsection (2)(a)(ii), the maximum exemption may not exceed $84,000 per household.[37]

The plain language of this subsection requires that when a homestead exemption is claimed in a property by more than one person, as opposed to an individual, the property must be "jointly owned" and the exemption may only be claimed by a "joint owner."[38] Reading this subsection (2)(b) with subsection (2)(a),[39] it stands to reason that if the property is not jointly owned, the individual claiming an exemption under subsection (2)(a) makes that claim on behalf of the household, including the spouse.[40]

The Debtor argues that there is no equity in the Property because both he and the Spouse may claim a homestead exemption. Section 78B-5-503(2)(b) therefore plainly applies and it requires that "each" person claiming the exemption be an "owner" of the property. As discussed below, the Spouse is not an "owner" of the Property for purposes of claiming a homestead exemption under Utah law.

    2.  The Debtor has not established that the Spouse has a cognizable legal interest in the Property sufficient to make her an "owner" entitled to a homestead exemption under Utah Code § 78B-5-503(2)(b).

Although the Utah Exemption Act does not define the word "owner," this word is commonly defined as "[s]omeone who has the right to possess, use, and convey something."[41] Those holding legal title of course are "owners" for purposes of claiming a homestead

---

[37] Utah Code § 78B-5-503(2)(b)(ii) (emphasis added).

[38] *See Marion Energy, Inc v. KFJ Ranch P'ship*, 2011 UT 50, 267 P.3d 863, 866 (plain language of statute must control).

[39] *See Anderson v. Utah Dep't of Com.*, 2025 UT 19, 572 P.3d 373, 376 ("When interpreting a statute, we do not view the operative statutory language in isolation . . . Instead, we look at the provisions in the context of the entire statutory scheme.") (citations and internal quotations omitted).

[40] *See* Utah Code § 78B-5-502(5) (dependent includes a spouse of an individual who derives support primarily from the individual).

[41] OWNER, Black's Law Dictionary (12th ed. 2024); *see White*, 402 P.3d at 142 ("When interpreting a statute, we assume, absent a contrary indication, that the legislature used each term advisedly according to its ordinary and usually accepted meaning.") (quoting *Hutter v. Dig-It, Inc.*, 2009 UT 69, ¶ 32, 219 P.3d 918).

exemption.[42] Ownership may also be based on equitable interests but only if the person has "a legally cognizable interest or estate in the subject property."[43] This makes sense because § 78B-5-503 serves to exempt a homestead "from levy, execution, or forced sale[,]"[44] and therefore, there must be a tangible interest that can be levied, executed upon, or sold.[45] The need for a cognizable legal interest also comports with the noted common meaning of "owner."

Legally cognizable interests in property have included those involving possessory interests coupled with a leasehold estate,[46] a written contract to purchase property,[47] or a beneficiary interest in a trust.[48] Also, § 78B-5-503(1)(d)(iii) recognizes "an equitable interest in real property awarded to a person in a divorce decree by a court" is property that may be claimed as an exempt homestead.[49]

The Court has found no cases under Utah law standing for the proposition that a homestead exemption may be based on possession alone. In fact, in *White v. White*[50] the Utah Court of Appeals soundly rejected a homestead claimant's argument that "even if he had no title or ownership, his possession and use of the Property as his residence established an interest

---

[42] *See, e.g.,* Utah Code title 57; *Panagopulos*, 69 P.2d at 619 (entity holding title is owner of property); *White*, 402 P.3d at 142 (same).

[43] *White*, 402 P.3d at 141; *see In re Cornia*, No. 13-22364, 2013 Bankr. LEXIS 1746 at *8 (Bankr. D. Utah Apr. 26, 2013) (Marker, J.).

[44] Utah Code § 78B-5-503(3).

[45] *See White*, 402 P.3d at 141 (homestead exemption serves to "protect[] a right of sufficient value to be coveted by creditors, one that can be sold under execution") (quoting *Panagopulos*, 69 P.2d at 619) (internal quotation marks omitted).

[46] *Panagopulos*, 69 P.2d at 619–20.

[47] *Stucki*, 202 P.2d at 493 (homestead exemption exists where defendant purchased the property under a written contract and occupied the premises as a home even though he did not hold record title); *Hansen v. Mauss*, 40 Utah 361, 121 P. 605, 607–08 (1912) (claimant without title entered into a purchase agreement for the property and occupied the property).

[48] *In re Kester*, 493 F.3d 1208 (10th Cir. 2007); *Cornia*, 2013 Bankr. LEXIS 1746.

[49] *See West v. Christensen (In re Christensen),* 561 B.R. 218 (Bankr. D. Utah 2016) (Thurman, J.), *aff'd sub nom. West v. Christensen*, 576 B.R. 223, 228-29 (D. Utah 2017) ("The divorce decree vests an ownership interest in property in the spouse to whom the property is awarded."); *In re Harrell*, No. 05-38736, 2007 WL 2986130 (Bankr. D. Utah June 15, 2007) (Thurman, J.) (same).

[50] 402 P.3d 136.

sufficient to support a homestead exemption claim."[51] Holding there was no legally cognizable

interest, the court stated:

> While we do not entirely foreclose the possibility that a debtor in bare possession
> of property as a residence might theoretically call on the protection of the Act
> against a creditor who seeks to execute on whatever interest such possession might
> represent, we have been unable to find a single case in Utah—nor has [Appellant]
> pointed us to any—where mere occupancy alone, without some accompanying
> interest or estate in the property, was sufficient to support an exemption claim.
> Rather, even in cases where occupancy appears to be the basis of the claimant's
> entitlement, the claimant has had an interest in the property beyond simple
> occupancy.[52]

Thus, the Debtor's argument based on possession alone is not consistent with Utah homestead

law.

The Debtor primarily relies on *Panagopulos v. Manning*,[53] for the proposition that mere

possession of property allows a person to claim a homestead exemption. *Panagopulos,* however,

does not support this argument. Although the court stated a homestead exemption may be

predicated on title and possessory interests in property,[54] that case did not involve an exemption

claim based on possessory rights alone. Rather, the issue was whether a homestead exemption

could be claimed by a debtor with title and possessory leasehold interests in property even

though his ownership was subject to the life estates of third parties.[55] Despite the life estates, the

court allowed the exemption because the debtor had title to property and exclusively possessed

---

[51] *Id.* at 143.
[52] *Id.*
[53] 69 P.2d 614 (discussing rights under a former exemption statute, Utah Rev.St.1933 § 38-0-1 *et seq*. This statute is very different from § 78B-5-503).
[54] *Id.* at 619, *quoted in* Second Dr. Resp., p. 5 (There "are two bases or interest in real property upon which a homestead right may be predicated and which may give rise to a claim of homestead—title and possession. The homestead exemption protects alike both of the interests, and may be founded or asserted to protect either one."). The Debtor relies on the fact that the debtor in *Panagopulos* transferred title to his spouse. Other than pointing this out, the court in that case assumed that the debtor had title to the property.
[55] *Id.* at 617, 619-20 (stating the issue raised in the case).

11

the property pursuant to a year to year verbal lease – which the court deemed to be a "leasehold estate."[56]

The Debtor further asserts that the Spouse has an equitable interest in the Property based on "marital" rights. But, Utah is not a community property state, so marriage itself does not establish an ownership interest. And, the Debtor has identified no other "marital" rights affording the Spouse a cognizable legal interest in the Property that would make her an owner.

The Debtor also claims the Spouse has an equitable interest in the Property because her income or her household duties contributed to the Property. While it is entirely unclear how financial or in-kind contributions could create a cognizable legal interest in property for purposes of asserting ownership under § 78B-5-503[57] – *i.e.*, there is no tangible interest to levy, execute upon or sell[58] – this issue is not before the Court because there is no evidence that the Spouse's income contributed to the Property. The Court also notes that a homemaker's duties certainly may contribute to a homestead or to a partner-owner's ability to earn an income to preserve the property, but Utah has not recognized that a homemaker without legal title to property has an equitable interest in property based on this premise. In fact, § 78B-5-503(2)(a) says that in this situation the individual owner makes a claim on behalf of the household, including a spouse.

---

[56] *Id.* at 619 ("[W]here the holder of the fee was in exclusive possession and occupancy of the premises and had been since he received the fee in 1904, occupying the same as his home and paying the life tenant an annual rental, we have no hesitancy in saying that he can assert a homestead, free from judgment lien and execution, as long as he has exclusive occupancy of the premises as his home.").

[57] Financial contributions have been recognized as sufficient to create an equitable interest for purposes of property division in divorce proceedings, *see, e.g.*, *Johnson v. Johnson,* 2007 UT App 329, 2007 WL 2965127, at *2; but, the Debtor did not cite, and the Court has not found, cases concluding that a spouse's financial contributions create a legally cognizable interest for purposes of claiming a homestead.

[58] *See In re Shamo*, No. 20-24085, Dkt. No. 22 (Bankr. D. Utah Oct. 21, 2020) (Marker, J.) (financial contributions not sufficient to create an ownership interest under § 78B-5-503) (citing *In re Belcher*, 551 F.3d 688 (7th Cir. 2008)).

12

Lastly, the Debtor appears to argue that the Utah legislature intended to imbue all non-titled spouses with an ownership interest in homestead property by § 78B-5-504(4), which provides that:

> If an individual is married, no conveyance of or security interest in, or contract to convey or create a security interest in property recorded as a homestead prior to the time of the conveyance, security interest, or contract is valid, unless both the husband and wife join in the execution of the conveyance, security interest, or contract.[59]

Debtor asserts that "[i]f the Utah state legislature wanted to exclude a wife, they would have left the wife out of the statute."[60] This argument is without merit. First, the Court notes that this provision is expressly limited to property that has been "recorded as a homestead" using the declaration of homestead procedures outlined in § 78B-5-504, so it is not applicable here as the Court has no evidence that a declaration was recorded. Even if it were applicable, the statute was clearly intended to create a consent mechanism to prevent a title-holding spouse from unilaterally disposing of homestead property—not to create an ownership interest in a spouse without title where such an interest otherwise does not exist.[61]

### C. Objections Under § 1325(a)(4) Based on a Potential Avoidable Transfer Do Not Require an Adversary Proceeding.

The Debtor maintains that the Trustee did not follow proper procedure by raising a potential avoidable transfer as an objection to confirmation of his Plan. Instead the Debtor argues that making claims under § 548 of the Bankruptcy Code requires the filing of an adversary proceeding. [62] It is true that Federal Rule of Bankruptcy Procedure 7001(a) requires commencing

---

[59] Second Dr. Resp., p. 7.
[60] *Id.*
[61] *See Nielson v. Peterson*, 30 Utah 391, 85 P. 429, 430–31 (1906) (analyzing the substantially similar predecessor statute, Utah Rev.St.1898 § 1155, and concluding that "[t]he foregoing provisions of the statute do not confer upon the wife a vested estate or property right in the premises claimed as a homestead when such premises are owned by, and the legal title thereto is in, the husband." Rather, it is "[t]he power of alienation, and not the nature of the husband's estate" that is affected by this statutory protection).
[62] First Dr. Resp., p. 3.

13

an adversary proceeding for actions "to recover money or property" such as actions to avoid and recover a transfer of property under §§ 548 and 550. The Trustee, however, is not seeking to recover the Property for the benefit of the estate. Rather, the Trustee objects to confirmation of the Plan under § 1325(a)(4) because a distribution under Chapter 7 would be more than that proposed in the Debtor's Plan.[63]

As discussed, the best interests of creditors test under § 1325(a)(4) requires a comparison of the value of a Chapter 13 distribution and the amount that would be paid to unsecured creditors "*if* the estate . . . were liquidated under chapter 7 . . . ."[64] It plainly operates in a hypothetical context and does not require a trustee to establish that property is recoverable.[65] In this case, the Trustee appropriately considered the value of a potential avoidable transfer action in calculating a distribution in a hypothetical Chapter 7 liquidation and an objection to confirmation of the Debtor's Plan was the proper vehicle to raise this concern.[66]

### IV.    CONCLUSION

The Court concludes that the Debtor has not met his burden of establishing that the best interest of creditors test under § 1325(a)(4) has been satisfied and, therefore, the Trustee's objection to confirmation of his Plan under § 1325(a)(4) must be sustained. Unsecured creditors in a hypothetical Chapter 7 liquidation would receive a distribution because there is equity in the Property as the Spouse does not have a cognizable legal interest in the Property affording her an ownership interest required under Utah Code § 78B-5-503(2)(b).

---

[63] *See* Tr. Reply, p. 1.
[64] 11 U.S.C. § 1325(a)(4) (emphasis added).
[65] *Dewey*, 237 B.R. at 788 (analysis under § 1325(a)(4) is based on a "hypothetical" liquidation).
[66] The Debtor did not contest the Trustee's calculation or that a Chapter 7 trustee "could be reasonably expected to succeed in setting aside the transfers" under § 548. *See* Tr. Supp. Brief, pp. 1–2 (quoting *In re Larson*, 245 B.R. 609, 615 (Bankr. D. Minn. 2000)).

## DESIGNATION OF PARTIES TO BE SERVED

Service of the foregoing *MEMORANDUM OPINION* shall be served to the parties and in the manner designated below:

**By Electronic Service:** I certify that the parties of record in this case, as identified below, are registered CM/ECF users:

- **Lon Jenkins tr    ecfmail@ch13ut.org, lneebling@ch13ut.org**
- **Hillary R. McCormack    hillarym@hwmlawfirm.com, ecfmail@hwmlawfirm.com**
- **Theron D. Morrison    topofutahlaw@gmail.com, cory@morlg.com;chapter7email@gmail.com**
- **United States Trustee    USTPRegion19.SK.ECF@usdoj.gov**

**By U.S. Mail** – In addition to the parties for record receiving notice through the CM/ECF system, the following parties should be served notice pursuant to Fed R. Civ. P. 5(b).

*None.*